STATE SAVINGS BANK OF CARLETON *v.* BAKER.

1. Gifts—Delivery of Passbook.

Valid gift of money deposited in savings account may be effected by delivery to donee of depositor's passbook with intent to give donee deposit represented by it.

On effect of delivery of bank book to sustain gift of money in bank, see annotation in 3 L. R. A. 230; 11 L. R. A. 686; 18 L. R. A. 171; 19 L. R. A. 700.

2. JOINT TENANCY—BANK DEPOSIT—SURVIVOR.
    Where depositor told bank cashier that she wanted to create joint
        account, and cashier took up old passbook and made out new
        one in joint names, joint deposit was effected, entitling survivor
        to deposit.

Appeal from Monroe; Root (Jesse H.), J. Submitted January 29, 1932. (Docket No. 220, Calendar No. 36,304.) Decided April 4, 1932.

Bill of interpleader by State Savings Bank of Carleton against Ruth Baker, Minnie Todd, and Jacob Geiermann, administrator of the estate of Mary Ehle, deceased, to determine ownership of savings account. Decree for defendant Baker. Defendant Geiermann appeals. Affirmed.

*Golden & Kelley,* for appellant.

*Gordon & Williamson,* for appellee Baker.

BUTZEL, J. Plaintiff, State Savings Bank of Carleton, Michigan, filed a bill of interpleader to ascertain whether to pay a savings account of $1,945.73 to Minnie Todd, or Ruth Baker, or the estate of Mary Ehle, deceased, defendants herein. Mrs. Ehle, an elderly lady, moved into the home of Mrs. Todd on August 2, 1929. She had but a short time previously lived with relatives of Ruth Baker. In September, 1929, she opened a savings account in her own name in plaintiff bank, but within a day or two thereafter directed the cashier to add the name of Minnie Todd to the account, and thus make it a joint account, payable to either of them and in the event of the death of one of them, to their survivor. The cashier added the name of Minnie Todd on the ledger sheet and the passbook. Mrs. Todd signed a card agreeing to the rules and regulations of the

bank and she and Mrs. Ehle also signed a joint deposit agreement. Mrs. Ehle claimed that she was mistreated by Mrs. Todd, and on or about August 20, 1930, she went to make her home with Ruth Baker. Shortly thereafter she directed the cashier of plaintiff bank to remove Minnie Todd's name from her account, and he, accordingly, drew a line through the name, added the notation: "Minnie Todd erased 9/2/30," closed the account, and opened a new one in the name of Mary Ehle alone. On September 24, 1930, the cashier went to the Baker home in response to a statement of Mrs. Baker that Mrs. Ehle wanted to see him in order to change the account into a joint one with Mrs. Baker. He took a passbook made out in the name of Mary Ehle and Ruth Baker with him to the Baker home, but found Mrs. Ehle too ill to write her name. The cashier testified that Mrs. Ehle had not asked him to make the account a joint one until September 24, 1930, the day he went to her home. He talked with her for a half hour. He testified that she stated:

"I want my money to go to Ruth Baker when my burial expenses are paid. I want Ruth to have what I have left."

The testimony is not very clear as to just what else was said, but it is sufficient to support the finding of the trial judge that Mrs. Ehle directed the account to become a joint one with Mrs. Baker, and, in the event of the death of either, to the survivor. The cashier left the passbook made out in the joint names and took away the old one. He also left a card for the parties to sign. On one side there was a short agreement binding the depositors to observe the rules and regulations of the bank. This was to be signed by Mrs. Baker. On the other side of the

card, there were provisions for making the account a joint one, payable on the order of either party, and, in the event of death of one of them, to the survivor. Mrs. Baker signed the card on the 24th of September, 1930, and both Mrs. Ehle and Mrs. Baker signed the joint agreement on September 25, 1930, the day that Mrs. Ehle passed away from a heart attack. No question is raised as to the genuineness of the signatures. Very shortly after Mrs. Ehle's death the card was brought to the bank and a withdrawal slip was signed in the name of Mrs. Ehle by the cashier for the purpose of completing the bank's records. Both the cashier and Mrs. Ehle understood the effect of a joint account, payable to either party or their survivor. The one between Mrs. Ehle and Mrs. Todd had been created and destroyed with somewhat the same informality that characterized the subsequent one with Mrs. Baker. The bank assented to the creation of the joint account by exchanging the new passbook made out to the joint account of Mrs. Ehle and Mrs. Baker for the former book which was surrendered to the cashier. The transaction was virtually completed at that time. The bank did ask for the signing of other papers to complete its records.

We believe that the case differs from one where the bank is asked to honor a check subsequent to the death of the maker, for in the instant case it had verbal notice, tantamount to an assignment *in præsenti* of the change prior to the death and written notice thereafter. In *Peoples State Bank of Holland* v. *Miller's Estate,* 198 Mich. 783, we upheld the right of a survivor to a bank account where the decedent wrote a letter to the bank directing it to add the name of an additional party to the bank account so as to make it a joint account payable to either

party or their survivor. A valid gift of money deposited in a savings account may be effected by the delivery to the donee of the depositor's passbook with intent to give the donee the deposit represented by it. *Union Trust & Savings Bank* v. *Tyler,* 161 Mich. 561, 564 (137 Am. St. Rep. 523).

The decree of the lower court in holding that a joint account had been effected and that Ruth Baker, the survivor, was entitled to the deposit, is herewith affirmed, with costs to plaintiff and to be paid out of the fund held by it.

CLARK, C. J., and McDONALD, POTTER, SHARPE, NORTH, FEAD, and WIEST, JJ., concurred.