IN RE ESTATE OF KATIE M. PALMER.
EVA PALMER BYSTROM AND ANOTHER v. FRANCIS
HAYWARD PALMER AND OTHERS.[1]

March 13, 1953.

No. 35,921.

[1]Reported in 57 N. W. (2d) 409.

*Brill & Brill,* for appellants.
*Albert H. Clemens and Oscar C. Ronken,* for respondents.

CHRISTIANSON, JUSTICE.

This is an appeal from a judgment of the Olmsted county district court affirming the order of the probate court disallowing the will of Katie M. Palmer dated June 11, 1951, and allowing the will dated April 2, 1940, as the last will and testament of said decedent.

◼ The trial court found that the testatrix lacked testamentary capacity at the time the will dated June 11, 1951, was executed. Appellants assign this finding as error. The question thus presented is not whether this court, if it had the power to try the question *de novo,* would decide otherwise, but is whether the evidence reasonably supports the finding. See, 6 Dunnell, Dig. & Supp. § 10212, and cases cited in note 91; 1 Dunnell, Dig. (3 ed.) § 411. If it is clear, after considering all the evidence, that at the time the will was made the testatrix comprehended the nature and extent of her property, her relation to the natural objects of her bounty, and the effect of her will in disposing of her property and was able to hold these things in mind long enough to form a rational judgment concerning them, then we must hold as a matter of law that the testatrix had sufficient mental capacity to make a will. But, if there is evidence which reasonably supports the finding that the testatrix did not have such capacity, we are bound by the trial court's determination of fact. Borstad v. Ulstad, 232 Minn. 365, 45 N. W. (2d) 828; In re Estate of Olson, 227 Minn. 289, 35 N. W. (2d) 439; 6 Dunnell, Dig. & Supp. §§ 10208, 10212, and cases there cited.

◼ Katie M. Palmer voluntarily relinquished the control of her estate to a guardian in 1946, giving as the reason that she was un-

able and incompetent to care for her property because of advanced age. At the time Mrs. Palmer marked her X to the purported will dated June 11, 1951, she was 91 years of age, bedridden, and very feeble. She passed away on August 10, 1951.

Decedent resided with Mrs. Mina Doty from the spring of 1946 until the fall of 1949. Mrs. Doty, a wholly disinterested witness called by contestants, testified that during the latter part of this period decedent failed to get the meaning of ordinary newspaper accounts when they were read to her. Subsequently, when decedent was living in her own home, Mrs. Doty visited her on two occasions between the months of January and June 1951. On each of these occasions she observed that decedent was getting weaker physically and was failing mentally as well. On or about June 12, 1951, Mrs. Doty and her mother called on decedent and stayed with her for 15 or 20 minutes. Mrs. Doty observed at that time that decedent was much weaker physically and her mind was not as clear as it had been before; that decedent did not know Mrs. Doty and her mother were there part of the time; that her mind would "sort of be off in a distance * * * like it was wandering" and then it would "Come back to her partly."

Margaret Moorhead, another witness for contestants, testified that she visited decedent about once a week during the months of January through May 1951. She stated that she noticed a change in decedent's condition commencing in January of that year. From the month of March on she observed that decedent "seemed to get weaker every time I saw her" and, although previously decedent had talked about things in the past, thereafter, she didn't ask questions or show any interest in things. In May 1951, notwithstanding the fact that decedent had known her since she was a child and Mrs. Moorhead told her who she was, decedent gave no indication that she knew who Mrs. Moorhead was and failed to respond to any of her questions.[2]

---

[2]Since there is nothing in the record to indicate that Margaret Moorhead was an interested witness or party within the meaning of the dead man's statute (M. S. A. 595.04), appellants' motion to strike all of her testimony

Other witnesses for contestants corroborate the testimony of Mina Doty and Margaret Moorhead with respect to decedent's mental condition. The opinion testimony of Margaret Cassidy that decedent lacked testamentary capacity will subsequently be considered. However, since findings of fact should not be set aside unless clearly erroneous and due regard should be given to the opportunity of the trial court to judge the credibility of the witnesses, no useful purpose would be served by our detailing such additional testimony or the strong conflicting testimony offered by appellants. It is sufficient to state that from the record presented we cannot say that there is no evidence reasonably tending to support the trial court's finding that by reason of extreme old age, physical weakness, and impairment of mental faculties decedent was incompetent to make a will on June 11, 1951. Accordingly, the finding of the trial court on the issue of testamentary capacity must stand.

■ Appellants contend that it was error to allow Margaret Cassidy to give an opinion as to the testatrix's competency. Since Margaret Cassidy was not an attesting witness, it was necessary that she state facts within her knowledge and base her opinion on such facts. In re Estate of Crosby, 218 Minn. 149, 15 N. W. (2d) 501; In re Will of Pinney, 27 Minn. 280, 6 N. W. 791, 7 N. W. 144; 6 Dunnell, Dig. & Supp. § 10211; see, In re Estate of Hartz, 237 Minn. 313, 318, 54 N. W. (2d) 784, 788. Margaret Cassidy, who had known decedent for many years, testified to a visit she had with decedent in the early part of June 1951. She conversed with decedent for a good half hour and in her testimony related decedent's conversation in detail. Decedent's conversation was childish and she just rambled about things in the past. Thereafter, the trial court permitted Mrs. Cassidy to give her opinion, based on this conversation, as to decedent's competency, indicating that the slightness of the foundation affected the probative value of her opinion but that, nevertheless, it was a sufficient basis for an opinion. We

concerning conversations with the decedent on the ground of incompetency was properly denied. See, McEleney v. Donovan, 119 Minn. 294, 138 N. W. 306, and In re Estate of Arnt, 237 Minn. 245, 249, 54 N. W. (2d) 333, 336.

agree that the foundation for the witness's opinion is not strong, but the sufficiency of a foundation is a matter largely within the sound discretion of the trial court. In re Estate of Crosby, 218 Minn. 149, 15 N. W. (2d) 501; In re Estate of Christ, 166 Minn. 374, 208 N. W. 22; In re Estate of Olson, 148 Minn. 122, 180 N. W. 1009, 181 N. W. 569. Since the witness's recollection of her conversations with decedent was exhausted and the opinion was restricted to such conversations, we cannot say that it was an abuse of the trial court's discretion to receive her opinion as to decedent's competency.

■ Appellants also assign as error the admission of that part of Ethel Claude's testimony which was in response to questions propounded by the trial court. After striking the witness's opinion as to decedent's competency on the basis of insufficient foundation, the trial court asked substantially identical questions, stating that it did not receive these answers as opinion but as an attempt by the witness to state facts which the witness was unable to state in any other way. We agree that this was improper. However, since the trial was by the court and since it had previously ruled that the foundation for the witness's opinion was inadequate, it is doubtful that the trial court placed any weight on the answers in question. The applicable rule is well expressed in Mankato Mills Co. v. Willard, 94 Minn. 160, 164, 102 N. W. 202, 203, as follows:

"* * * where issues of fact are tried by the court without a jury, and incompetent evidence is admitted, but the competent evidence is sufficient to support the findings of fact, and there is no reasonable ground for inferring from the character of the incompetent evidence that it was or might have been a material factor in the court's determination of the facts, the admission of such evidence is not reversible error."

This rule is particularly applicable where, as here, there was no motion for a new trial and no amended or other findings were requested of the trial court.

Since appellants' remaining assignments of error all pertain to the reception of certain opinion testimony which was subsequently stricken by the trial court, they present no grounds for reversal.

Judgment affirmed.